UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| GREGORY J. WHITAKER,<br><br>Petitioner,<br><br>vs.<br><br>J.W. COX, in his capacity as Warden of Yankton Federal Prison Camp,<br><br>Respondent. | 4:21-CV-04010-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER JURISDICTION |

Petitioner, Gregory J. Whitaker, filed a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Whitaker is an inmate at the Yankton Federal Prison Camp (Yankton FPC) in Yankton, South Dakota. Id. at 1. In his petition, Whitaker seeks to require the Bureau of Prisons (BOP) to immediately apply the earned time credits he asserts he has accumulated under the First Step Act. Id. at 8. Respondent, the Warden of Yankton FPC, filed a Motion to Dismiss Whitaker's habeas petition asserting failure to exhaust administrative remedies, lack of subject matter jurisdiction and failure to state a claim. Doc. 10. Whitaker opposes dismissal of his petition. Doc. 14. For the following reasons, this Court grants the Warden's motion for dismissal based on lack of subject matter jurisdiction.

I.  **Background**

Whitaker is serving a 60-month sentence of imprisonment for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Doc. 12 ¶ 4. Whitaker has a projected release date of April 27, 2022 based on his good conduct time. Id.; see also Doc. 12-1 at 1. His sentence was imposed on November 1, 2018, in the United States District

Court for the District of Nebraska. Doc. 12-1 at 2. Whitaker is an inmate at Yankton FPC. Doc. 1.

On or about December 14, 2020, Whitaker submitted a Request for Administrative Remedy form to the Warden requesting to redeem the First Step Act "earned time credits" he had accumulated to date. Doc. 1-1 at 2. Whitaker alleged he "[had] been active in programming and productive activities the entire time" and was "owed 24 months of programming from Dec. 2018 [to] Dec. 2020." Id. Whitaker believed his programming during this time was equal to 12 months of earned time credit. Id. The Warden denied Whitaker's request on January 4, 2021, stating the earned time portion of the First Step Act did not become effective until January 15, 2022. Id. at 3. The Warden also explained that to earn time credits, the BOP staff "must assign the inmate to the evidence-based recidivism reduction programming or productive activity based on an identified need for the inmate." Id.

Whitaker was informed he could appeal to the Regional Director if dissatisfied with the Warden's decision, and Whitaker did so. Id. at 4. On January 29, 2021, the Regional Director issued a response, which recited various milestones the BOP had completed in implementing the First Step Act. Doc. 12-3 at 1. The response advised Whitaker "[t]he Department of Justice and Federal Bureau of Prisons are reviewing the legislation and will implement all necessary steps to comply with this significant piece of legislation. As such, you are encouraged to maintain clear conduct and participate in recommended programs." Id. Whitaker was again advised of his right to appeal, which was to the Office of General Counsel. Id. An appeal to the General Counsel is the final step in the administrative review process. Doc. 12 ¶ 8. Whitaker states he availed himself of this final step and submitted a certified mail receipt to support his statement. Doc. 14-1 at 1, 4.

## II.     First Step Act

The First Step Act ("FSA"), Public Law No. 115-391, 132 Stat. 5195, was enacted on December 21, 2018 and brought about a number of prison and sentencing reforms. One of the reforms required the Attorney General to create a "risk and needs assessment system" to individually classify, identify, and provide appropriate evidence-based recidivism reduction programs or productive activities to prisoners. See 18 U.S.C. § 3632(a). Congress directed that the risk and needs assessment system be used to "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities[.]" Id. § 3632(a)(6). The types of incentives and rewards available to prisoners for participation in programming and productive activities include phone and visitation privileges, transfers to facilities closer to home, increased commissary spending, and time credits. Id. § 3632(d)(1)–(4). The system is also used to "determine when a prisoner is ready to transfer into prerelease custody or supervised release[.]" Id. § 3632(a)(8).

Whitaker's § 2241 petition involves the earned time credit portion of the FSA. Doc. 1. Under the FSA, time credits may be earned by eligible prisoners who successfully complete evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Time credits are earned at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." Id. § 3632(d)(4)(A)(i). Certain minimum and low risk prisoners are eligible to earn an additional 5 days of time for every 30 days of successful participation. Id. § 3632(d)(4)(A)(ii). Not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits. See id. § 3635(3), (4). Additionally, limits exist on when those credits may be earned. "A prisoner may not earn time credits . . . for an evidence-based recidivism reduction program that

3

the prisoner successfully completed" before the enactment of the First Step Act or prior to commencement of the prisoner's sentence. Id. § 3632(d)(4)(A).

To effectively further the purposes of the law, deadlines were incorporated for completion of various milestones toward fully implementing the Act's prison and sentencing reforms. The Act required that within 210 days of enactment, the Attorney General had to establish a comprehensive "risk and needs assessment system" to assess and determine the individual risks and needs of each prisoner. See 18 U.S.C. § 3632(a). The United States Department of Justice met this goal on July 19, 2019 when the system was announced. See U.S. Dep't of Justice, The First Step Act of 2018: Risk and Needs Assessment System -- Original Post available at https://www.bop.inmates/fsa/resources.jsp (last checked April 22, 2021).

The next milestone, which was due 180 days thereafter, was to implement and complete an initial intake risk and needs assessment for each prisoner. Id. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). Press Release, U.S. Dep't of Justice, Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last checked Apr. 22, 2021).

The final milestone, which commenced after the initial risk assessments for all prisoners were completed, is a 2-year phase-in period for providing evidence-based recidivism reduction programming and productive activities. 18 U.S.C. § 3621(h)(2)–(3). During the phase in period, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities to *all* prisoners, and during that time the BOP is to further develop and

validate the PATTERN tool. Id. § 3621(h)(2). During the phase-in period, the BOP was instructed to provide priority for programming to prisoners based on his or her proximity to release date. Id. § 3621(h)(3). Congress also gave BOP authority to use the incentives and rewards program for prisoners who successfully participate in approved programming and productive activities during this time. Id. § 3621(h)(4). Section 3621(h)(4) provides:

> **(4) Preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives.**—Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

Id.

### III.  Administrative Exhaustion

A petitioner seeking habeas corpus relief under 28 U.S.C. § 2241 must exhaust his or her administrative remedies prior to filing. Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009); United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam). "Exhaustion is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). Nevertheless, administrative exhaustion under § 2241 is a judicially created doctrine and not a jurisdictional prerequisite. Lueth v. Beach, 498 F.3d 795, 707 n.3 (8th Cir. 2007). There are exceptions to the exhaustion requirement, including: (1) if the petitioner would suffer irreparable harm without immediate judicial consideration of the claim; (2) the agency is unable to grant relief, such as a challenge to the procedure itself; or (3) the agency is biased or has otherwise predetermined the issue before it. McCarthy, 503 U.S. at 147–49. This Court must balance the interest of the petitioner in receiving prompt access to the court against the institutional interests favoring exhaustion when determining whether exhaustion is required. Id. at 146.

Here, the Warden argues that Whitaker's petition should be dismissed because he has not completed the final step of the BOP's administrative remedy process. Doc. 11 at 15–16. Based on the record, it appears Whitaker has appealed to the Office of General Counsel, but has not yet received a response. Doc. 14-1 at 1, 4. The Warden asserts that Whitaker's entitlement to the relief he seeks depends on a factual record and involves resolution of factual issues such as: (1) whether Whitaker is eligible to earn First Step time credits; (2) what areas of need the BOP has determined are necessary for him; (3) what evidence-based programs and productive activities has BOP staff assigned to him; (4) which programs and activities has Whitaker completed, among other factual issues. Doc. 11 at 16–17. This Court agrees that a factual record developed through the administrative remedy process would be helpful when considering § 2241 petitions like Whitaker's involving claims for earned time credits. See Doc. 11 at 17. Thus, the Warden's argument has some merit and appeal.

In reality, however, the administrative process actually employed by the BOP when considering an inmate's request to apply earned time credits does not build the factual record the Warden claims would be useful to the court. At least it did not do so in Whitaker's case or in the many others being presented to the courts in the District of South Dakota.[1] Instead, at each step of the administrative review process that Whitaker engaged in, the BOP merely indicated that the earned time credits of the First Step Act do not take effect until January 15, 2022. See Doc. 12-3 at 1–5. This Court has little reason to expect that the final response from the Office of General Counsel will be different.

---

[1] The United States should reconsider the use of the argument that the court "would benefit from the development of a factual record . . . during the administrative exhaustion process" until such time as the BOP's administrative remedy process is actually making the record described by its counsel.

6

Because a factual background is not being developed during the BOP's processing of Whitaker's administrative appeal, and Whitaker is now simply awaiting a decision from the Office of General Counsel, this Court concludes dismissal for failure to exhaust administrative remedies is unwarranted.

## IV. Subject Matter Jurisdiction

The Warden next argues that Whitaker's petition should be dismissed because his request for relief is premature. Doc. 11 at 18. According to the Warden, there is no justiciable case or controversy as required by Article III of the United States Constitution because "the deadline for implementing the incentives component of the Risk and Needs Assessment System has not passed." Id. The Warden also contends Whitaker has not suffered an actual injury because he "has not yet earned enough time credits to create a concrete dispute." Id.

This Court's subject matter jurisdiction encompasses only "cases" and "controversies" under Article III, § 2 of the Constitution. A petitioner's standing to sue is a necessary component of the "case or controversy" requirement. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Standing to sue includes three elements: (1) the petitioner must have suffered an "injury in fact" that is concrete, particularized, and "actual or imminent," not conjectural or hypothetical; (2) the injury must be traceable to the respondent's action which is being challenged; and (3) the injury must be one that would be redressed by a decision favorable to the petitioner. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Whether standing exists is a question of law for this Court to determine. Park v. Forest Serv. of the U.S., 205 F.3d 1034, 1036 (8th Cir. 2000).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991). "A court

7

deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Warden asserts both a facial attack and a factual attack on subject matter jurisdiction. As to a facial attack, the Warden argues the deadline for implementing and applying First Step credits has not come to pass. Doc. 11 at 18. The Warden argues the deadline for implementation of the incentive component is January 15, 2022. Id. at 19. As to a factual attack, the Warden argues Whitaker's petition is premature because he has not completed enough time credits to create a concrete dispute. Id. at 22. This Court takes up the factual attack on subject matter jurisdiction and conducts an independent review of the evidence presented.

Another way of understanding the argument that Whitaker's petition is premature is under the requirement of standing. See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (explaining "in many cases, ripeness coincides squarely with standing's injury in fact prong"). To have standing means Whitaker must have suffered an "injury in fact" that this Court could redress by a favorable ruling. See Park, 205 F.3d at 1037. An "injury in fact" is one that is concrete, particularized, and "actual or imminent," not conjectural or hypothetical. Lujan,

504 U.S. at 560–61. In determining subject matter jurisdiction, this Court must evaluate for itself the merits of whether Whitaker has suffered an "injury in fact." Osborn, 918 F.2d at 730. As the petitioner, Whitaker has the burden of proof that jurisdiction exists. Id.

Turning to that issue, Whitaker contends he is entitled to 365 days of earned time credits under the FSA. Doc. 1 at 8. Whitaker calculates he has completed 730 days of programming since December 21, 2018, when the FSA was enacted, and is eligible to apply half of that time to reduce his sentence. Id. The Warden, through an affidavit by a unit manager at Yankton FPC, agrees that Whitaker is eligible to earn First Step time credits under 18 U.S.C. § 3632(d). Doc. 13 ¶ 5. But the Warden concludes Whitaker has not yet earned any such time credits. Id. ¶ 10.

The FSA's earned time credits are available to an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities . . . ." 18 U.S.C. § 3632(d)(4)(A). The programming and productive activities which qualify for credits are assigned to each prisoner by the BOP according to the individual prisoner's specific criminogenic needs. Id. § 3632(b)(1). Those needs are identified for each prisoner by the BOP through the use of the PATTERN, a risk and needs assessment tool. Id. § 3621(h)(1)(A); see also Docket 13 ¶ 2.

Whitaker was initially assessed using the PATTERN Risk Tool in December 2019. Docket 13 ¶ 6. On July 8, 2020 and October 22, 2020, re-assessments were conducted that designated Whitaker a Minimum on the PATTERN Risk Tool. Id. Whitaker was determined to have programming needs in the areas of (1) anger/hostility, (2) finance/poverty, (3) work, and (4) substance abuse. Id. at ¶ 7. Whitaker is currently participating in the Residential Drug Abuse Treatment Program (RDAP), which will address two of his programming needs; however, Whitaker has not yet completed RDAP and will not be awarded time credits until he has successfully done so. Id. ¶ 8. The unit manager attests that Whitaker has not completed any

9

approved and assigned evidence-based recidivism reduction programs or productive activities that have earned him time credits at this point. Id. ¶ 10.

Whitaker appears to claim he is entitled to earned time credit for each day he has been incarcerated since the FSA was enacted regardless of whether he has participated in programming or productive activities. See Doc. 1 at 8; Doc. 12-3 at 2, 4; Doc. 14 at 1. For instance, in his response to the motion to dismiss Whitaker asserted that he has now accumulated "400 plus days" of earned time credit. Doc. 14 at 1. Whitaker did not provide any explanation or evidence supporting the programming or productive activity he was involved in, how many hours or days of time credits were earned by participating in such programming or productive activity, or how those activities addressed his individually identified needs as assessed by the BOP.

Congress clearly did not intend every program or activity within the prison environment to qualify as an evidence-based recidivism reduction program or productive activity, otherwise there would be no need to specifically define those terms. See 18 U.S.C. §§ 3635(3), 3635(5). There is no reason to believe Congress intended prisoners to start accumulating earned time credits simply by being incarcerated after the enactment of the FSA. Yet, this untenable proposition is essentially what Whitaker asserts in his § 2241 petition.

For these reasons, Whitaker has not demonstrated he has sustained an injury in fact that this Court could redress. There is no colorable evidence that Whitaker has earned time credits as provided in the FSA. At this point, Whitaker's petition asserts nothing more than a conjectural or hypothetical injury. He has not suffered an injury that is concrete, particularized, and actual or imminent for purposes of standing.

### V.  Conclusion

Respondent's motion to dismiss is denied on the basis of failure to exhaust administrative

10

remedies and granted for lack of subject matter jurisdiction because Petitioner has not demonstrated an injury in fact at this time. As a result, it is unnecessary to reach Respondent's third basis for failure to state a claim upon which relief can be granted.

Therefore, it is hereby

ORDERED Respondent's motion to dismiss (Doc. 10) is GRANTED and Petitioner's § 2241 petition is Dismissed Without Prejudice.

Dated May 4, 2021.

                                        BY THE COURT:

                                        _____
                                        ROBERTO A. LANGE
                                        CHIEF JUDGE